UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC W. GREEN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DELGADO, et al.,<br><br>　　　　　Defendants. | Case No.: 1:14-cv-00297 LJO JLT<br><br>FINDINGS AND RECOMMENDATIONS GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT<br><br>(Docs. 60, 61[1], 65) |

　　　　While he was incarcerated at California Correctional Institute in Tehachapi, California, Plaintiff claims the Defendants subjected him to excessive force while moving him to a new cell. (Doc. 1 at 4)  Plaintiff claims that despite the fact he complied with the officers' orders, and was wearing handcuffs, they forced him to the ground and beat him with batons, kicks and punches.  Id. at 4-5.  During the incident, Plaintiff suffered a compound fracture of his right fibula.  Id. at 5.

　　　　The parties agree that Plaintiff was found guilty of assault on a correctional officer in an administrative proceeding in connection with the incident.  (Doc. 60-3 at 33-34)  Defendants argue this determination has not been set aside and, as a result, the action is Heck-barred.  Further, Officer

---

[1] Because the Court determines this matter based upon the issued raised in the motion for summary judgment brought by the other Defendants, the Court declines to consider the sole issue raised by Ortega in his motion.  (Doc. 60)  However, Ortega joined in the motion of the other Defendants and, therefore, receives the benefit of the Court ruling in that regard.

1

1  Ortega argues he was not present at the time of the incident and, therefore, is entitled to judgment.  All
2  of the defendants argue that because Plaintiff has no evidence as to which officer landed which blow,
3  they are entitled to judgment and, finally, they claim they are entitled to the protections of qualified
4  immunity.  Because the Court concludes the matter is <u>Heck</u>-barred, the Court recommends
5  Defendants' motions be **GRANTED[2].**

### I.   Background

On April 14, 2013, Plaintiff was incarcerated at CCI.  (Doc. 60-3 at 65)  On that date, he was being held at the clinic due to the unavailability of an appropriate cellmate in the Administrative Segregation facility.  <u>Id</u>. at 66.  Prison officials had determined Plaintiff would be placed in the SHU due a charge that he battered a staff member.  <u>Id</u>.

During the morning hours (Doc. 60-3 at 66-67), four officers approached Plaintiff's holding cell and told Plaintiff to "cuff up."  Id. at <u>69</u>.  Plaintiff stuck his hands into the tray slot for handcuffing.  <u>Id</u>. at 68.  As Plaintiff exited the cell, he saw four officers were present to escort him.  <u>Id</u>. at 69, 70-71. Plaintiff saw Officers Delgado, Ramirez, Ortega and Gonzales.  <u>Id</u>. at 72.  Plaintiff did not know the officers and had never seen them before, but he learned their names later.[3]  <u>Id</u>. at 71-72. The group began walking to "A" Building with the four officers walking behind Plaintiff.  <u>Id.</u> at 71, 72.

The walk took between 90 and 120 seconds.  (Doc. 60-3 at 73)  When the group reached the breezeway near the new housing location, Plaintiff claims the officers attacked him.  <u>Id</u>. at 74.  Prior to this, Plaintiff was "just walking."  <u>Id</u>. at 74, 75.  Plaintiff claims that Delgado grabbed him and slammed him to the ground and that Delgado went to the ground also.  <u>Id</u>. at 75; Doc. 67 at 81.  At this time, the other three officers, Ortega, Ramirez and Gonzales, began stomping and kicking him.  <u>Id</u>. at 75, 84; Doc. 67 at 82.  Except for Delgado, the other officers were "behind and over" Plaintiff's, while Plaintiff was lying face down.  <u>Id</u>. at 75, 85.  Plaintiff claims that Delgado was holding Plaintiff's head in a "head lock" while the other officer beat him. (Doc. 60-3 at 76, 85, 86)  Plaintiff claims that during

---

[2] Because the Court decides this matter on the <u>Heck</u> issue, it declines to consider the other issues raised in the motions.
[3] During the incident, Plaintiff claims he saw Delgado's name tag and part of Ortega's name stitched onto his shirt. (Doc. 60-3 at 76)

2

this attack, the officers called him names and said that this was "what you get for a battery on a peace officer." Id. at 77.

During the encounter, Plaintiff was struck on the right ankle and suffered a broken ankle in addition to bruises and other injuries. (Doc. 60-3 at 78, 79, 80) After the blows to the ankle the incident ended and Plaintiff claims he was "dragged" into a cell. (Doc. 67 at 55, 83)

After the incident, Plaintiff was charged with assault on a peace officer not likely to cause serious injury. (Doc. 60-3 at 83, 99) The investigation into the incident relied upon statements by the officers involved and other witnesses. Id. at 97-108. This investigation revealed that Ramirez and Delgado went to Plaintiff's holding cell to escort him to a new housing assignment. Id. at 101, 104, 108. As the two officers escorted Plaintiff to the new cell, Delgado told Plaintiff he would be housed temporarily in cell "8B-105."[4] Id.  Plaintiff stopped and said, "Fuck that!" and attempted to break free of the officers' grasp. Id. Plaintiff then pulled to his right and kicked back with his left leg toward Delgado. Id. In response, Delgado forced Plaintiff to the ground and kneeled on his back while Plaintiff continued to twist and to kick. Id. When Plaintiff refused to comply with orders to stop kicking, Ramirez struck Plaintiff with a baton on his lower right leg. Id. Ramirez struck another blow to the same area when Plaintiff continued kicking. Id. After this, Plaintiff complied. Id.

At the hearing, the hearing officer considered the investigation report, the Crime/Incident Report and a statement by Plaintiff that "it's all a flat out lie. One minute I was walking to the building and the next minute I'm on the ground. I was stomped and kicked. I know this comes down to there [sic] word against mine. He was on my left side but my right side is where all the injuries are. It's all a lie." (Doc. 60-3 at 106-107) Nevertheless, the hearing officer found Plaintiff guilty of the rules violation and assessed a loss of credits and was ordered to receive another term in the SHU. (Doc. 60-3 at 83, 105)

**II.     Legal Standards for Summary Judgment**

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order

---

[4] Apparently, this cell is a "management cell" which lacks basic amenities and has only a mattress on the floor. (Doc. 67 at 105, 108, 109, 138)

to see whether there is a genuine need for trial." Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim.  Fed. R. Civ. P. 56(a); *see also* Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted).  The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same.  *See* Fed. R. Civ. P. 56 (a), (c); Mora v. Chem-Tronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Summary judgment, or summary adjudication, should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Wool v. Tandem Computers, Inc., 818 F.2d 1422, 1436 (9th Cir. 1987).  A party demonstrates summary adjudication is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact.  Fed R. Civ. P. 56(e); Matsuhita, 475 U.S. at 586.  An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 587.  The party is required to tender evidence of

specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits.  Id. at 586 n.11; Fed. R. Civ. P. 56(c).  Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987).  However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323.

The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law.  Henry v. Gill Indus., Inc., 983 F.2d 943, 950 (9th Cir. 1993).  In resolving a motion for summary judgment, the Court can only consider admissible evidence.  Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988)).  Further, evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party.  Orr, 285 F.3d at 772; Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

**III.   Motions for Summary Judgment**

    **A.   Heck Bar**

Defendants argue that Plaintiff's action is barred by Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641, 648 (1997).  (Doc. 61-1at 4-6.)  They argue that based upon the April 14, 2013 incident, Plaintiff was charged with a rules violation and found guilty of assault on a peace officer.  (Doc. 60-3 at 83, 105) He was assessed a penalty of 61 days of credit (Doc. 60-3 at 83, 105) and did not challenge the guilty finding.  (UMF No. 63)  Thus, Defendants argue, since Plaintiff's claims under §1983 necessarily imply the invalidity of the punishment imposed in a prison discipline proceeding, Plaintiff is barred from pursuing it here.  (Id., at 5:4- 6:15.)

In Heck, the United States Supreme Court determined that a § 1983 action may not be used to attack a criminal conviction.  Heck, 512 U.S. at 486.  Thus, in situations where the plaintiff's success on the § 1983 action would necessarily imply the invalidity of his underlying conviction or sentence,

he must first demonstrate he has received a "favorable termination" of his criminal conviction through a reversal or similar court action. Id. at 486-487. In Edwards v. Balisok, 520 U.S. 641, 643–647 (1997), the Court extended this requirement to § 1983 actions that, if the plaintiff is successful, would imply the invalidity of prison administrative decisions which assess a loss of good-time credits.

However, these cases do not wholly prohibit an inmate from challenging actions related to prison disciplinary proceedings. The Ninth Circuit has explained,

> In Heck, the Supreme Court ruled that an inmate may not seek damages in a § 1983 claim when establishing the basis for the claim necessarily involves demonstrating that the conviction, sentence, or length of incarceration is invalid. 512 U.S. at 480–82, 114 S.Ct. 2364; see also Edwards v. Balisok, 520 U.S. 641, 643–47, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (extending Heck rule to § 1983 claims that, if successful, would imply the invalidity of deprivations of good-time credits provided for by prison disciplinary proceedings). But the Supreme Court has clarified that Heck does not bar a § 1983 claim that "threatens no consequence for [an inmate's] conviction or the duration of [his or her sentence.]" Muhammad v. Close, 540 U.S. 749, 751, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004). We have also held that application of Heck "turns solely on whether a successful § 1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement." Ramirez v. Galaza, 334 F.3d 850, 856 (9th Cir.2003).

Wilkerson v. Wheeler, 772 F.3d 834, 840 (9th Cir. 2014). In Ramirez, the Court considered the evolution of Heck and noted, "nothing in Preiser, Heck, or Edwards holds that prisoners challenging the conditions of their confinement are automatically barred from bringing suit under § 1983 without first obtaining a writ of habeas corpus. **Rather, the applicability of the favorable termination rule turns solely on whether a successful § 1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement**." Ramirez v. Galaza, 334 F.3d 850, 856-58 (9th Cir. 2003)(emphasis added.)

For example, in Muhammad v. Close, 540 U.S. 749, 752 (2004), the inmate was charged with rules violations. The prison policy required his placement in "special detention" based upon the nature of the rules violations charged. Id. However, after the hearing, the inmate was found not guilty of the offense that required the special detention, though he was convicted of a lesser charge. Id. As a result, he was ordered to serve six days of special detention and was assessed 30 days of lost privileges. Id. at 752-753.

In his § 1983 action, the plaintiff sought damages for the emotional injury suffered by him

while placed in the pre-hearing special detention.  Muhammad, at 753.  He did not challenge the result of the disciplinary proceeding nor the sanctions imposed.  Id.  In allowing the § 1983 action to proceed, the Supreme Court determined that,

> [T]hese administrative determinations do not as such raise any implication about the validity of the underlying conviction, and although they may affect the duration of time to be served (by bearing on the award or revocation of good-time credits) that is not necessarily so. The effect of disciplinary proceedings on good-time credits is a matter of state law or regulation, and in this case, the Magistrate Judge expressly found or assumed that no good-time credits were eliminated by the prehearing action Muhammad called in question. His § 1983 suit challenging this action could not therefore be construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence. That is, he raised no claim on which habeas relief could have been granted on any recognized theory, with the consequence that Heck's favorable termination requirement was inapplicable.

Thus, for an inmate to proceed on a § 1983 action related to a disciplinary proceeding where a loss of credits is imposed, the relief sought by the civil action must be separable from the discipline.

Notably, whether the inmate is in custody at the time he brings his § 1983 action does not determine whether Heck's "favorable termination" rule applies.  In Ramirez, the Court relied upon and cited with approval, Torres v. Fauver, 292 F.3d 141, 144 (3d Cir. 2002).  In Torres, prison officials found the inmate guilty of a rules violation and sanctioned him to placement in disciplinary detention followed by placement in administrative segregation.  Torres, at 144.  Torres served the sanction, which nearly coincided with his release date from prison.  Id.  About 18 months after being released, he sued under § 1983 and challenged whether the determination of the disciplinary proceeding was supported by substantial evidence.  Id. at 144-145.  The trial court found that Heck barred the action.  Id.

On appeal, the court determined that Heck did not bar the action because the discipline imposed did not impact the length of his sentence.  Torres, 292 F.3d at 144.  Torres concluded,

> The favorable termination rule does not apply when a prisoner's § 1983 claims can implicate only the conditions, and not the fact or duration, of his confinement. **This is regardless whether he remains in custody, as in Leamer, 288 F.3d at 542–43, and DeWalt, 224 F.3d at 616–17, or is no longer in custody, as in Jenkins, 179 F.3d at 27, and Brown, 131 F.3d at 168.** Torres's claim challenges the procedures by which he was sentenced to disciplinary detention and administrative segregation. Because these punishments did not alter the length of his incarceration, the success of his claim would not "necessarily imply the invalidity of" the fact or duration of his confinement.

> Edwards, 520 U.S. at 646, 117 S.Ct. 1584; Heck, 512 U.S. at 486–87, 114 S.Ct. 2364. Thus the District Court erred in concluding that the favorable termination rule barred Torres from proceeding under § 1983.

Id., emphasis added. The situation here is different. Without dispute, the disciplinary proceeding resulted in Plaintiff losing 61 days of good time credits. (UMF 61[5]) Thus, *if* the RVR encompasses the actions at issue in the complaint, it is Heck-barred regardless of whether Plaintiff is no longer in custody.

Nonette v. Small, 316 F.3d 872, (9th Cir 2002) does not alter this result. Nonette considered whether an inmate, who had been released from prison, could challenge a disciplinary proceeding in which he was assessed a lost credits and seek damages for the claimed violation of his rights. Id. at 874-875. The Court concluded that the proper mechanism was a habeas petition but, given that Nonette had been released before he was able to pursue his habeas remedy, the Court determined that the § 1983 action could proceed. Id. at 875-877. However, the Ninth Circuit clarified Nonette a year later in Guerrero v. Gates, 442 F.3d 697, 705 (9th Cir. 2003) when it held,

> Although we held in Nonnette that the plaintiff could bring § 1983 claims despite the Heck bar because habeas relief was unavailable, we did so because Nonnette, unlike Cunningham, **timely pursued appropriate relief from prior convictions**. [Footnote] Nonnette was founded on the unfairness of barring a plaintiff's potentially legitimate constitutional claims when the individual immediately pursued relief after the incident giving rise to those claims and could not seek habeas relief only because of the shortness of his prison sentence.

Id., emphasis added. Guerrero reiterated also that Nonette applies *only* to cases in which "'former prisoners [are] challenging loss of good-time credits, revocation of parole or similar matters,'" quoting Nonette at 878, n.7. Here, Plaintiff admits that he took no action to have the disciplinary decision reversed and, at the hearing, his counsel admitted that the decision to do so was tactically motivated because he felt the outcome would be more favorable in a § 1983 action. Under Guerrero, this is insufficient. Likewise, Plaintiff is not challenging the loss of the good-time credits, a revocation of parole or the like.

On the other hand, Plaintiff admits, "The specific basis of the RVR was plaintiff's allegedly

---

[5] Though Plaintiff disputes the scope of the RVR determination, he offers no evidence that he was *not* sanctioned with 61 days of lost credits. (Doc. 67 at 31-32, 41)

breaking away from the officers while saying "Fuck that," and allegedly twisting and kicking while Officer Delgado attempted to hold him down." (Doc. 67 at 41) He notes also that there is no dispute that after officers struck Plaintiff twice on the ankle, he became compliant and no additional force was warranted. Id. Nevertheless, he argues, "The crux of this case is that plaintiff was repeatedly kicked and stomped at a time when he was compliant. The physical evidence shows multiple injury sites, indicating that more than two blows were struck, and on various parts of the plaintiff's body." Id. He continues, "The RVR did not address the propriety of any force used on the plaintiff after he was compliant, or force that caused injury. Therefore, the outcome of this case would [not] necessarily infer the invalidity of the RVR findings."

When finding Plaintiff guilty of assaulting the officers, the hearing officer found that [6]:

1. Plaintiff "stopped and said "Fuck that!" and attempted to pull away and break [from Delgado's] grasp. He pulled away to his right and kicked straight back with his left leg towards [Delgado]." (Doc. 60-3 at 34)

2. Plaintiff attempted to break free from Delgado's grasp "by pulling his left shoulder to his right side and kicked backwards with his left leg. Inmate Green continued to resist by twisting his upper torso side to side and kicking with both legs." (Doc. 60-3 at 33)

3. After Delgado "pulled him to the ground," Delgado attempted to hold inmate Green down in a prone position. As [Delgado] was attempting to hold inmate Green down he began twisting his upper torso side to side and kicking both his legs. Ramirez ordered Green to stop kicking. Inmate Green did not comply and continued to kick his legs." (Doc. 60-3 at 34)

4. While Plaintiff was on the ground and Delgado was "kneeling over his back . . . Inmate Green was twisting his upper torso side to side and kicking both legs." (Doc. 60-3 at 33)

These findings, therefore, encompass the force used to take Plaintiff to the ground and the force used to overcome his resistance once he was on the ground.

The parties do not address the elements of rule that Plaintiff violated. However, it appears the Court should be guided by 15 CCR § 3005 which charges the inmate with the obligation to "not willfully commit or assist another person in the commission of an assault or battery to any person or

---

[6] The hearing officer made eight findings were. The Court recites only four given the other four were duplicates except to the extent they relied upon other evidence to support them.

9

persons, nor attempt or threaten the use of force or violence upon another person." This implies the elements of assault on a peace officer not likely to cause serious bodily injury to be shown when the inmate: 1. willfully, 2. attempts, 3. to use force, 4. on a peace officer, 5. using means that are not likely to cause serious bodily injury. See Meadows v. Porter, 2009 WL 3233902 at *2 (ED Cal. 2009).

On the other hand, under California law, a person is entitled to defend himself with force in response to an assault or a battery. Thus, Plaintiff was entitled to resist the officers' excessive use of force. The fact that Plaintiff was convicted of the assault indicates that his claim that he was the victim of a battery by the officers—"One minute I was walking to the building and the next minute I'm on the ground. I was stomped and kicked"—was rejected. People v. Lynch, 101 Cal. 229, 231 (1894) ["An assault, in itself, is unlawful, and any act done in self-defense cannot be an assault."] Likewise, the officers were entitled to use force to stop the assault by Plaintiff.

Notably, in this action Plaintiff has testified that throughout the incident, he complied with the officer's commands, that the attack by the officers was completely unprovoked and was retaliation for a prior battery allegedly committed by Plaintiff on another staff member. Doc. 60-3 at 74, 75, 76, 77, 84, 85, 86; Doc. 67 at 81, 82. Id. at 75, 85. Plaintiff never claimed there was a period of resistance followed by one of compliance.[7] Plaintiff detailed the series of events ending with officers striking him on his ankle and then taking him to a cell. (Doc. 67 at 55, 83)

The facts here are different from those in Meadows v. Porter, 2009 WL 3233902. In Meadows, the inmate was found to have committed an act of attempted battery on a correctional officer. Id. at 1. This completed act was followed by a use of force by the officer. Id. The Court determined that because the events were separate and the elements of the attempted battery would not

---

[7] Likewise, his complaint never made this claim. (Doc. 1 at 4-5) Plaintiff's complaint reads,
> On April 14, 2013, Defendants DELGADO, RAMIREZ, GONZALES and ORTEGA went to GREEN'S cell. They informed GREEN he was to be moved to another housing unit. The Defendants placed handcuffs on GREEN and had him exit his cell. GREEN complied and the Defendants escorted GREEN to an isolated area of the prison housing unit. GREEN's hands were handcuffed behind his back as he was being escorted by the Defendants. The Defendants, and each of them, then forced GREEN to the ground and started to strike GREEN with batons, kicked and punched GREEN numerous times. GREEN was handcuffed and on the ground during the entire beating.

Id. The complaint continues by alleging Defendants "used excessive force by striking him with batons, fists, and kicking him while he was handcuffed, compliant and nonresistant, thereby fracturing his right fibular." Id. at 5, emphasis added; Id. at 6 ("compliant and nonresistant").

be negated by a finding that the officer used excessive force, Heck did not bar the claim.  Here, however, the RVR determined that Plaintiff was assaultive throughout the period when the officers used force. The acts of assault and the acts of force by the officers are inseparable and related spatially and temporally. Thus, if Plaintiff succeeded in proving that the officers used excessive force, by definition, he could not have been found to have assaulted the officers because he would have been entitled to use force to defend himself.  Thus, the Court concludes he is required to demonstrate he has satisfied the "favorable termination" rule. See Beets v. County of Los Angeles, 669 F.3d 1038, 1042 (9th Cir. 2012 ["[W]e recognized that an allegation of excessive force by a police officer would not be barred by Heck if it were distinct temporally or spatially from the factual basis for the person's conviction."]; Cunningham v. Gates, 312 F.3d 1148, 1155 (9th Cir. 2002), as amended on denial of reh'g (Jan. 14, 2003) [Where the assault and the forceful response arise from the same set of facts, the forceful response is a "natural consequence" to the plaintiff's provoking assault and is Heck-barred.]. Thus, the claim is Heck-barred.

Moreover, Plaintiff's current theory—that the RVR does not consider the entirety of the period of time the force used by the officers—is inconsistent with the evidence.  The RVR determined that Plaintiff's resistance *caused* the officers to use force and once he became compliant, the officers used no additional force.  There is simply no evidence presented by Plaintiff to support that the officers used force after that point.  As noted above, Plaintiff testified that after the second blow to his ankle, the officers did not use any additional force.  Despite this, Plaintiff points to the medical records in which Dr. Brenner noted, "He has blows[8] over the dorsum of the hand which caused numbness and tingling in the superficial radial nerve distribution." (Doc. 67 at 16) Likewise, Dr. Brenner noted, "Multiple sites of beating. [¶] The patient has numerous sites of abrasions and blows from apparent nightstick injury and a blow across the lateral ankle . . ." Id. at 17.  However, these opinions lack foundation.  Dr. Brenner fails to detail any expertise that allows him to opine as to the etiology of the injury.  He fails to detail upon what information he relied to form his opinions.  He fails to detail

---

[8] The Court is not clear what this means.  The Court will assume for purposes of this motion, Dr. Brenner is stating that Plaintiff *suffered blows to* the hand.

11

where the injuries—except for the ankle injury—were located on Plaintiff's body. If the injuries are on the front of Plaintiff's body, he does not explain how blows from the officers could have caused them. Alternatively, he does not explain whether the injuries could have been suffered when Delgado forced Plaintiff to the ground or when Plaintiff was thrashing—as the RVR noted—while he was on the ground.

Plaintiff relies also upon the testimony of the Registered Nurse Kimble who attended to Plaintiff after the incident. Kimble noted an abrasion and swelling to Plaintiff's right hand and foot. (Doc. 67 at 153) Plaintiff also had a raised area on his foot with a small open wound. Id. However, nothing in Kimble's testimony indicates that the use of force caused injuries that are not accounted for by the initial take-down and the baton strikes.

Therefore, the Court finds that Plaintiff's excessive force claim against Defendants for is barred by the favorable termination rule, and the claim must be dismissed. Heck, 512 U.S. at 489 (until and unless favorable termination of the conviction or sentence occurs, no cause of action under section 1983 exists).

**B.    Plaintiff's state law claims are barred**

In Yount v. City of Sacramento, 43 Cal.4th 885, 902 (2008), the California Supreme Court extend the Heck bar to state causes of action. The Court held,

> Heck, of course, is a rule of federal law that applies only to federal causes of action that challenge the validity of a state conviction. (Nuno v. County of San Bernardino, supra, 58 F.Supp.2d [1127] at p. 1130, fn. 3 [ (C.D.Cal.1999) ].) But we cannot think of a reason to distinguish between section 1983 and a state tort claim arising from the same alleged misconduct and, as stated above, the parties offer none ... Indeed, Yount's common law battery cause of action, like his section 1983 claim, requires proof that Officer Shrum used unreasonable force. (Edson v. City of Anaheim (1998) 63 Cal.App.4th 1269, 1273–1274, 74 Cal.Rptr.2d 614.)
>
> Moreover, this court has recently reiterated its concern about the use of civil suits to collaterally attack criminal judgments in the context of a convicted criminal defendant's civil action against his or her attorney for legal malpractice. (See Coscia v. McKenna & Cuneo (2001) 25 Cal.4th 1194, 1197, 108 Cal.Rptr.2d 471, 25 P.3d 670.) In holding that a criminal defendant must obtain exoneration by postconviction relief as a prerequisite to obtaining relief for the legal malpractice that led to that conviction, we recognized that our ruling would preclude recovery "even when ordinary collateral estoppel principles otherwise are not controlling, for example because a conviction was based upon a plea of guilty that would not be conclusive in a subsequent civil action involving the same issues." (Id. at p. 1204, 108 Cal.Rptr.2d 471, 25 P.3d 670.) Our justification for a bar of that scope included the promotion of judicial economy and the

" ' "strong judicial policy" ' " recognized in Heck itself " ' "against the creation of two conflicting resolutions arising out of the same or identical transaction." ' " (<u>Coscia</u>, <u>supra</u>, 25 Cal.4th at p. 1204, 108 Cal.Rptr.2d 471, 25 P.3d 670, quoting <u>Heck</u>, <u>supra</u>, 512 U.S. at p. 484, 114 S.Ct. 2364.)

Therefore, for the reasons set forth above as to the § 1983 claim, the Court finds that Plaintiff's state law claims for battery, negligence and for violation of the Bane Act are barred by <u>Heck</u>.

**FINDINGS AND RECOMMENDATIONS**

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days after being served with these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991); <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **September 21, 2015**              /s/ Jennifer L. Thurston
                                         UNITED STATES MAGISTRATE JUDGE